Michael W. **TOWNSEND,** Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,** Respondent.

No. 02–3064.

United States Court of Appeals, Federal Circuit.

July 11, 2002.

Before NEWMAN, Circuit Judge, PLAGER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

PER CURIAM.

The petitioner, Michael W. Townsend, seeks review of the final decision of the Merit Systems Protection Board ("the Board") affirming a determination of the Office of Personnel Management ("OPM"), in which OPM denied Mr. Townsend's application for disability retirement pursuant to the Federal Employees Retirement System ("FERS"). *Townsend v. Office of Pers. Mgmt.*, No. CH–844E–01–0120–I–1, slip op. (M.S.P.B. Mar.30, 2001). For the reasons explained below, we *affirm*.

## I. BACKGROUND

Mr. Townsend was employed with the Forest Service ("Agency") as a law enforcement officer. *Id.* at 2. While he was on patrol in August 1993, Mr. Townsend shot and killed a man who had physically confronted him. *Id.* at 3. The police, FBI, and Forest Service found that Mr. Townsend acted properly, in self defense. *Id.*

Following this incident, Mr. Townsend remained off work for some time, but worked periodically during the five years after the shooting. *Id.* Upon returning to work, Mr. Townsend began to experience nervousness, tension, headaches, flashbacks. *Id.* The agency referred him to a clinical psychologist, Dr. David Lanier, who had examined him in a pre-employment psychological screening in 1991. Dr. Lanier examined Mr. Townsend following the shooting incident, in September 1993. *Id.* Dr. Lanier treated Mr. Townsend for several months. He noted that Mr. Townsend demonstrated substantial anxiety, constriction of emotion, guilt, depression, and obsession regarding the incident. *Id.*

Dr. Lanier treated Mr. Townsend on four occasions in 1995 for the same reasons. In May 1998, Dr. Lanier again began a series of treatments of Mr. Townsend, and diagnosed Mr. Townsend's condition as a generalized anxiety disorder and post-traumatic stress disorder ("PTSD"). Dr. Lanier recommended that Mr. Townsend seek employment in a field in which he would not engage in activities triggering an association with the shooting. *Id.*

Mr. Townsend attempted to obtain an accommodation from the Agency, such as a transfer. In a letter dated June 28, 1999, Dr. Lanier recommended two accommodations: that Mr. Townsend not work alone in remote areas, particularly the area of the shooting, and, that Mr. Townsend not work under the supervision "of certain personnel with whom he has worked in recent years." *Id.* at 4. The agency failed to make either of these accommodations. *Id.*

Mr. Townsend eventually ceased working at the Forest Service. After the agency determined that it was unable to provide the accommodations recommended by Dr. Lanier, Mr. Townsend began working in another position as a "partially disabled" individual, with the assistance of the Department of Labor, Office of Workers' Compensation Programs. *Id.* While receiving workers' compensation benefits, Mr. Townsend accepted a position as a Deputy Sheriff. *Id.* In a letter dated November 17, 1999, an Agency medical doctor found Mr. Townsend "unable to perform the essential functions of his job" as a law enforcement officer. *Id.* Dr. Lanier again stated that Mr. Townsend would be able to work as a law enforcement officer only if the employer could provide both previously recommended accommodations. *Id.* Another doctor, Dr. Bennett Asher, M.D., examined Mr. Townsend. *Id.* He concluded that although various physical test re-sults were negative, Mr. Townsend should "get out of law enforcement work" because of PTSD. On September 20, 2000, the Agency removed Mr. Townsend effective October 6, 2000, based on his continuing inability to perform the critical duties of his position, and the agency's inability to accommodate his disability.

Following his removal, Mr. Townsend applied for disability retirement under the Federal Employee Retirement System (FERS). *Id.* at 1. The Office of Personnel Management (OPM) denied his application for a disability retirement under FERS. *Id.* Following OPM's denial, Mr. Townsend appealed to the Merit Systems Protection Board (MSPB). *Id.* An Administrative Judge (AJ) of the MSPB held a hearing to determine whether OPM properly determined that Mr. Townsend was not entitled to a disability retirement. *Id.*

The AJ concluded that Mr. Townsend was not entitled to a disability retirement. Although his removal raised a presumption of entitlement to a disability retirement, *id.* at 7, the AJ found that OPM had rebutted the presumption, by producing evidence sufficient to support a finding that Mr. Townsend was not entitled to disability retirement benefits, *id.* at 5. This evidence consisted, among other things, of a statement by Dr. Bruce N. Butler, M.D., who reviewed the medical documentation in Mr. Townsend's case and concluded that it failed to support a finding of disability because the medical documentation lacked details regarding medication, counseling attended, progress notes from treatment, or restrictions from occupational duties. *Id.* Dr. Butler stated that the medical evidence failed to clarify why Mr. Townsend's employment as a sheriff (another law enforcement position with similar duties) fails to trigger PTSD. *Id.* The AJ also noted that Mr. Townsend had testified that in the five-year period following the shoot-

ing incident, his performance was evaluated as fully successful. *Id.* The AJ noted that Mr. Townsend's supervisor, Glen Thomas, identified only poor attendance as precluding him from performing at a fully successful level. The AJ concluded that the evidence introduced by OPM was sufficient to rebut the presumption that Mr. Townsend was entitled to a disability retirement, shifting to Mr. Townsend the burden of proving his entitlement by preponderant evidence. *Id.*

The AJ held that Mr. Townsend failed to meet this burden. Because the AJ determined that Mr. Townsend failed to prove by preponderant evidence that he is unable to perform useful and efficient service as a law enforcement officer, the AJ affirmed OPM's denial of Mr. Townsend's application for disability retirement. *Id.* at 6. Although Mr. Townsend submitted evidence from three doctors stating that he is disabled from performing useful and efficient service, the AJ found that the letters failed to identify specific duties he is unable to perform. *Id.* The AJ also noted that Mr. Townsend performs similar duties as a sheriff, and that for approximately five years immediately following the shooting incident, his performance was fully successful. *Id.* The AJ stated that although the record contained evidence that Mr. Townsend experienced flashbacks based on working near the location of the incident or discussing the incident with supervisors, Mr. Townsend failed to demonstrate whether treatment including counseling or medication could control his symptoms, and failed to demonstrate that a job accommodation was impracticable. *Id.*

Before affirming the OPM's denial, the AJ stated that: "poor attendance alone does not constitute a basis on which to grant a disability retirement." *Id.* (citing *Wilkey–Marzin v. Office of Pers. Mgmt.*, 82 M.S.P.R. 200, 208 (1999)). The AJ also stated that "[t]he fact that the appellant may have suffered from stress, anxiety, and even depression does not support a finding of disability retirement in the absence of evidence showing he is unable to perform the specific duties of his position." *Id.* (citing *Burckley v. Office of Pers. Mgmt.*, 80 M.S.P.R. 617, 621 (1999)). The AJ then affirmed the denial of Mr. Townsend's application for disability retirement. *Id.*

Mr. Townsend filed a timely petition for review before the Board. The AJ's decision became the final decision of the Board following its denial of this petition for review. *See Townsend v. Office of Pers. Mgmt.*, 90 M.S.P.R. 30 (M.S.P.B. 2001) (citing 5 C.F.R. § 1201.115) (order denying petition for review).

This appeal follows. We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

This court's authority to review the Board's decision is strictly limited by statute. *See* 5 U.S.C. §§ 8461(d), 8461(e) (2000). OPM's factual findings and conclusions regarding physical disability, may be reviewed only by the Board, not by this court. *Id.; see also Anthony v. Office Pers. Mgmt.*, 58 F.3d 620, 624–25 (Fed.Cir.1995) (citing *Lindhal v. Office Pers. Mgmt.*, 470 U.S. 768, 791, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985)). The same is true of OPM's factual findings regarding mental disability where the former employee, rather than the agency, applied for disability retirement. § 8461(e)(2) (2000). Because Mr. Townsend, rather than the Forest Service, applied for disability retirement, our review is limited to determining "whether there has been a substantial departure from important procedural rights, a misconstruction of the

governing legislation, or some like error going to the heart of the administrative determination." *Lindhal,* 470 U.S. at 791, 105 S.Ct. 1620 (internal quotations omitted).

■ Many of the alleged errors pertain to factual determinations, which this court cannot review. Mr. Townsend alleges that the Board improperly interpreted the medical evidence regarding his disability, by crediting Dr. Butler's conclusory statements and misapprehending Dr. Lanier's explanation of the triggers of Mr. Townsend's PTSD. These alleged errors are factual; they pertain to the Board's determination of whether Mr. Townsend's medical condition was incompatible with his ability to serve as a law enforcement officer. This court lacks authority to review such facts. Mr. Townsend also contends that the Board erred in concluding that his duties as a sheriff are similar to those he performed as a law enforcement officer with the Forest Service, and that his current employment as a sheriff is therefore evidence that he is not so disabled that he cannot perform the functions of a law enforcement officer. This is likewise an allegation of factual error. As such, this court cannot review this aspect of the Board's determination.

Mr. Townsend also contends that the Board made two legal errors. Although we may review these alleged errors to determine whether the Board misconstrued the governing law, we hold that it did not.

■ First, Mr. Townsend states that the Board failed to consider the fact that the agency terminated him due to a medical disability. The Board expressly noted, however, that Mr. Townsend was removed, "effective October 6, 2000, based on his continuing inability to perform the critical duties of his position and the agency's inability to accommodate his disability."

*Townsend v. Office Pers. Mgmt.,* No. CH–844E–01–0120–I–1, slip op. at 4 (M.S.P.B. Mar.30, 2001).

The Board proceeded to apply the correct legal standard. It noted that the removal of an employee for inability to perform the essential functions of his or her position creates a presumption that the employee is entitled to a disability retirement. *Id.; see also Bruner v. Office Pers. Mgmt.,* 996 F.2d 290, 294 (Fed.Cir. 1993). The Board observed that the presumption placed the burden of production on OPM, but concluded that OPM produced evidence sufficient to rebut the presumption. *Id.* at 5. After determining that OPM rebutted the presumption, the Board stated that the burden then shifted to Mr. Townsend to establish, by preponderant evidence, his entitlement to a disability retirement. *Id.* Although Mr. Townsend disputes *whether* OPM introduced evidence sufficient to rebut the presumption, he does not dispute that the Board applied the correct legal standard assuming, as we must, that the Board's factual assessment of the strength of OPM's evidence was correct.

■ Second, Mr. Townsend contends that the Board committed legal error when it stated that "poor attendance alone does not constitute a basis on which to grant a disability retirement." *Townsend v. Office Pers. Mgmt.,* No. CH–844E–01–0120–I–1, slip op. at 6, (M.S.P.B. Mar.30, 2001). Mr. Townsend correctly points out that the applicable regulation requires that:

> The individual must, while employed in a position subject to FERS, have become disabled because of a medical condition, resulting in a deficiency in performance, conduct, *or attendance,* or if there is no such deficiency, the disabling medical condition must be incompatible with ei-

ther useful and efficient service or retention in the position.

5 C.F.R. § 844.103(a)(2) (emphasis added).

The Board's statement, however, was consistent with this regulation. Poor attendance alone is insufficient, unless it is caused by the disabling condition. The Board made the challenged statement in the context of making the ultimate determination that the medical evidence of record failed to contain a clear and reasoned explanation of how Mr. Townsend's medical condition affected his specific work requirements. In this regard, the Board noted that Mr. Townsend's supervisor rated his job performance as fully successful during the five years immediately following the shooting, and at the time of Mr. Townsend's removal, his supervisor indicated that only poor attendance kept Mr. Townsend from continuing to perform at a fully successful level. *Townsend v. Office Pers. Mgmt.*, No. CH–844E–01–0120–I–1, slip op. at 5, (M.S.P.B. Mar.30, 2001). We understand the challenged statement to mean that, as a factual matter, the evidence failed to prove that Mr. Townsend's medical condition—as opposed to some other factor—caused his poor attendance. We cannot disturb this factual conclusion. Consequently, the Board's statement about attendance did not misconstrue the governing law.

The Board committed no error in construing the governing law, and this court cannot reexamine the Board's factual determinations. For these reasons, the final decision of the Board is affirmed.

No costs.